

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-6-2003

# Herman v. Millville

Precedential or Non-Precedential: Non-Precedential

Docket 02-2040

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Herman v. Millville" (2003). *2003 Decisions.* Paper 572.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/572

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO.  02-2040

_____

DEBBIE A. HERMAN,
Appellant

v.

CITY OF MILLVILLE; CITY OF MILLVILLE POLICE DEPARTMENT;
PATRICIA AIKEN, PATROLMAN; CHRISTOPHER GROFF, PATROLMAN;
MARIA BONILLA; SHERRY TROUT; JILLIAN BONILLA; JOHN DOE,
LAW ENFORCEMENT OFFICERS and/or EMPLOYEES OF THE CITY
OF MILLVILLE (1-100) fictitious names, jointly, severally,
and/or in the alternative

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. No.  00-cv-02930)
District Judge: Jerome B. Simandle

_____

Argued February 25, 2003

Before: BECKER[*], Chief Judge, SCIRICA[**], Circuit Judge, and SHADUR[***], District
Judge

(Filed      May 5, 2003                )

_____

[*]Judge Becker completed his term as Chief Judge on May 4, 2003.

[**]Judge Scirica succeeded to the position of Chief Judge on May 4, 2003.

[***]Honorable Milton I. Shadur, United States District Judge for the Northern District of
Illinois, sitting by designation.

ARTHUR J. MURRAY, ESQUIRE (Argued)
Jacobs & Barbone, P.A.
1125 Pacific Avenue
Atlantic City, New Jersey 08401

       Counsel for Appellant

THOMAS B. REYNOLDS, ESQUIRE
JOSEPH L. MARCZAK, ESQUIRE (Argued)
Reynolds & Drake
29 North Shore Road
P.O. Box 345
Absecon, New Jersey 08201

       Counsel for Appellees City of Millville, City of Millville Police
       Department, Patricia Aiken and Christopher Groff

ROBERT P. MERENICH, ESQUIRE (Argued)
Gemmel, Todd & Merenich
767 Shore Road
P.O. Box 296
Linwood, New Jersey 08221

       Counsel for Appellees Maria Bonilla and Sherry Trout

—————————————————————————————————————

OPINION OF THE COURT
————————————————————————

BECKER, Chief Judge.

This is an appeal by plaintiff Debbie A. Herman from an order of the District

Court granting summary judgment to the defendants. The defendants are the City of

Millville, New Jersey, its Police Department, and a number of City employees. Herman

claims that her civil rights were infringed when she was forced to face criminal charges in

2

connection with two incidents in which she was charged with using her car to intimidate members of the Millville Police Department. Herman and her husband William Herman, then the Millville Chief of Police, were at odds with various members of the Millville Police Department, which, Herman asserts, led to an incomplete investigation of the facts surrounding the incidents, and an illegal arrest. However, since we conclude that there was (nonetheless) probable cause to charge Debbie Herman, we will affirm the judgment of the District Court.

I.

The two incidents occurred on June 29 and July 3, 1998. Defendant Sherry Trout, a Millville Police Department clerk, told the investigating officer that as she and Jillian Bonilla, the six year-old daughter of Maria Bonilla, a clerk/translator with the Millville Municipal Court, were walking across the Wal-Mart parking lot in Millville on June 29, 1998, Debbie Herman accelerated her car towards the pair in an attempt to place them in fear of bodily injury.[1] Millville Police Officer Patricia Aiken stated that on July 3, 1998, while she was directing traffic at an intersection where a two-car accident had occurred, Herman first drove her vehicle through the intersection without incident and then returned ten minutes later and made a left turn, almost striking her, after she had motioned for

_____

[1]Trout had recently filed a claim against the City of Millville and William Herman, alleging sexual harassment and sexual discrimination. She had also named Debbie Herman in the lawsuit, alleging that Debbie Herman had pushed her and made pig noises at her during a retirement dinner.

Herman to stop.[2]

Herman was charged with two counts of vehicular aggravated assault under N.J.S.A. 2C:12-1(b)(1), two counts of harassment under N.J.S.A. 2C:33-4(c), and reckless driving under N.J. S.A. 39:4-96 (in connection with the June 29, 1998 incident). She was also charged with reckless driving and attempting to purposely or recklessly cause bodily injury to a law enforcement officer while in the performance of her duties in violation of N.J.S.A. 2C:12-1(b)(5)(a) (in connection with the July 3, 1998 incident). The cases were referred to the Cumberland County Prosecutor's Office, which conducted an investigation into the incidents, and reduced the aggravated assault charge to a simple assault charge. The cases were tried together in the Millville Municipal Court by Judge Thomas Heim, who dismissed the charges after hearing testimony, but found Debbie Herman guilty of a reduced charge of careless driving in connection with the July 3, 1998 incident and fined her $150 plus costs. Herman brought suit in the United States District Court for the District of New Jersey; she appeals the District Court's grant of summary judgment on the following claims: (1) under 42 U.S.C. § 1983, alleging a violation of the Fourth Amendment; (2) false arrest/false imprisonment; (3) malicious prosecution; (4) negligence; (5) negligent training and/or supervision by the City and the Police Department; and (6) intentional and/or negligent infliction of emotional distress.

The District Court had jurisdiction over the federal and state law based claims

---

[2]The City had paid $85,000 to Aiken to settle a sexual discrimination suit which she had brought against the City, naming William Herman as a defendant.

4

pursuant to 28 U.S.C. §§ 1331, 1334 and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a grant of summary judgment is plenary. *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 566 (3d Cir. 2002).

## II.

The central issue here is whether the officers had probable cause to arrest Herman, since probable cause is a complete defense to each and every claim.[3] We must affirm the grant of summary judgment on these claims if there was probable cause to arrest her. Probable cause exists, if at the time of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

### A. The June 29, 1998 Incident

In connection with the Wal-Mart incident, Herman was charged with two counts of

---

[3]The Section 1983 claim must fail if there was probable cause to file charges, for then there was no Fourth Amendment violation. *See* U.S. Const. amend. IV ("The right of people to be secure . . . against unreasonable search and seizures, shall not be violated, and no Warrants shall issue, *but upon probable cause*.") (emphasis added). *See also Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1154 (N.J. 2000) ("[P]robable cause is an absolute defense to Plaintiff's false arrest, false imprisonment, and malicious prosecution claims."). To set forth a claim for negligence, the plaintiff must prove: (1) the existence of a duty; (2) the breach of the duty; and (3) proximate causation. *See LaBracio Family P'Ship v. 1239 Roosevelt Avenue, Inc.,* 773 A.2d 1209, 1213 (N.J. Super. 2001). Assuming a duty existed between Herman and the defendants, there was no breach if charges were filed against her based on probable cause. Likewise, the City and the Police Department did not negligently supervise Aiken and Groff if they acted on probable cause. Finally, the defendants did not negligently or intentionally inflict emotional distress on Herman if there was probable cause to file charges against her.

vehicular aggravated assault under N.J.S.A. 2C:12-1(b)(1), two counts of harassment under N.J.S.A. 2C:33-4(c), and reckless driving under N.J.S.A. 39:4-96. In support of these charges, investigating officer Groff had a statement from Sherry Trout that Debbie Herman had accelerated her car towards Trout and six-year-old Jillian Bonilla and had come very close to hitting them. Groff also had a statement from Maria Bonilla, Jillian's mother, that her daughter told her about the incident. Both Trout and Jillian Bonilla stated that they believed that Herman had tried to run them down.

N.J.S.A. 2C:33-4(c)defines harassment as "with purpose to harass another" engaging in a course "of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." It thus appears, from these statements, that a prudent officer could believe that Herman engaged in a course of alarming conduct with the purpose to alarm or seriously annoy Trout and Jillian Bonilla. N.J.S.A. 2C:12-1(b)(1) provides that "[a] person is guilty of aggravated assault if he . . . [a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury." Based on Trout and Bonilla's statements that Herman accelerated her car towards Trout and Jillian Bonilla and came very close to hitting them, it appears that a prudent officer could believe that Herman had attempted to cause serious bodily injury. Likewise, based on Trout and Bonilla's statements, a prudent officer could believe that Herman had committed the crime of reckless driving, which under N.J.S.A.

6

39:4-96 provides that "[a] person who drives a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of reckless driving." Once again, Trout and Bonilla's statements that Debbie Herman accelerated her car towards Trout and Jillian Bonilla, coming very close to hitting them, would lead a prudent officer to believe that Herman had driven her vehicle in willful disregard of the safety of others.

Debbie Herman counters that Groff should have interviewed her (and her husband William Herman who was in the passenger seat during the Wal-Mart incident) before filing charges; she maintains that the statements of Trout and Bonilla alone were not "reasonably trustworthy" because the parties had a history of animosity.[4] However, the history of animosity cuts both ways; it may also make the statements more trustworthy, because it suggests that Herman had a reason to harass Trout and Jillian Bonilla. The District Court recognized this when it observed that "[a] reasonable person could find that Mrs. Herman could have been motivated by previous contentious interactions to cause fear in Mrs. Trout and Jillian when presented with this opportunity." *Herman v. City of Millville*, No. 00-2930, slip op. at 14 (D.N.J. March 21, 2002). At all events, probable cause does not require the officer to investigate every lead or that the officer obtain proof

---

[4]Herman also alleges that Groff should not have conducted the investigation because he had a contentious history with the Hermans; Groff had voiced criticism about William Herman's performance as Chief of Police. However, probable cause existed if Groff had sufficient evidence to lead a reasonably prudent officer to believe Debbie Herman had committed an offense, whatever bias Groff may have had.

7

beyond a reasonable doubt. *See Trabal v. Wells Fargo Armored Service Corp.*, 269 F.3d 243, 251 (3d Cir. 2001).

The investigating officer is not in the business of weighing facts and credibility; that is the domain of the court. The officer must simply have information that is "reasonably trustworthy" to allow a prudent officer to believe that a crime has taken place. *See Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997). Moreover, the fact that the case was referred to the Cumberland County Prosecutor's Office, which determined that there was probable cause and sufficient proof to go to trial, suggests that charges were not filed simply because of hostility between the Hermans and the Millville Police Department.[5]

### B. The July 3, 1998 Incident

As for the events of July 3, 1998, Aiken filed charges against Herman for reckless driving and attempting to purposely or recklessly cause bodily injury to a law enforcement officer while in the performance of her duties, pursuant to N.J.S.A. 2C:12-1(b)(5)(a), which defines the offense as a simple assault against "[a]ny law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority or because of his status as a law enforcement officer." A simple assault is defined as being committed by one who "(1) [a]ttempts to cause or purposely, knowingly

---

[5]The fact that the Cumberland County Prosecutor's Office downgraded the charges from aggravated to simple assault does not establish that there was not probable cause to charge Herman with aggravated assault since aggravated assault simply requires a more culpable state of mind than simple assault.

or recklessly causes bodily injury to another; or (2) [n]egligently causes bodily injury to another with a deadly weapon; or (3) [a]ttempts by physical menace to put another in fear of imminent serious bodily injury." N.J.S.A. 2C:12-1(a).

Aiken testified before the Municipal Court that she motioned to Herman to stop her car and "when my back was turned, I thought I was going to be hit. She passed so close to me. She may have touched my pants, and actually I bent my legs because I thought that the car was going to pin me in." Herman contends that Aiken's account was not "reasonably trustworthy" to support probable cause because Aiken should not have been allowed to investigate the incident herself, since she was the one who had reported it and because Aiken and Herman had a contentious history. However, probable cause can exist based only on the eyewitness account of a police officer. *See Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) ("[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.") (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). We conclude that based on Aiken's testimony, a prudent officer could believe that Debbie Herman had committed a simple assault, *i.e.*, "[a]ttempt[ed] by physical menace to put another in fear of imminent serious bodily injury" or "[a]ttempt[ed] to cause . . . bodily injury," N.J.S.A. 2C:12-1(a), against a "law enforcement officer acting in the performance of his [or her] duties while in uniform or

9

exhibiting evidence of his [or her] authority or because of his [or her] status as a law enforcement officer." N.J.S.A. 2C:12-1(b)(5)(a). Based on this evidence a prudent officer could also believe that Herman had committed the crime of reckless driving, defined as "driv[ing] a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property." N.J.S.A. 39:4-96.

On the basis of the foregoing, we agree with Judge Simandle that no reasonable jury could find that there was not probable cause to arrest Herman for the offenses described. Accordingly, the judgment of the District court will be affirmed.[6]

---

[6]Even if there was not probable cause, Herman cannot bring a Section 1983 claim against any of the defendants because: (1) Bonilla and Trout were not acting under "color of law"; (2) Herman cannot show that the City of Millville or the Police Department were "deliberately indifferent,"which is necessary to establish municipal liability; and (3) Groff and Aiken are entitled to qualified immunity. The negligent infliction of emotional distress claim cannot succeed even if there was not probable cause, because there was no death or serious injury. The intentional infliction of emotional distress claim will also fail because the defendants' conduct was not "outrageous," even if they acted without probable cause.

10

TO THE CLERK:

Please file the foregoing opinion.

/s/Edward R. Becker

_____

Circuit Judge